ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/5/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
AMERICAN INTERNATIONAL GROUP, INC.,
and its subsidiaries,

           Plaintiff,

   - against -

UNITED STATES OF AMERICA,

           Defendant.
- - - - - - - - - - - - - - - - - - - - X

09 Civ. 1871 (LLS)

CERTIFICATION UNDER
28 U.S.C. § 1292(b)

On the letter-application of Plaintiff American International Group, Inc. ("AIG"), and over the opposition by defendant, I hereby certify my March 29, 2013 Opinion and Order denying AIG's motion for partial summary judgment for interlocutory appeal under 28 U.S.C. § 1292(b).

I am well aware that "Only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment", Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990), but this case presents the exceptional circumstances which warrant interlocutory appeal. My ruling turned on two related questions of law which together are controlling, and there are substantial grounds for difference of opinion as to each of them.

- 1 -

A reversal on either ground would produce judgment for AIG on the most significant of its claims in this complex (by any standard) action.

In each transaction, AIG's subsidiary sold preferred shares in its foreign affiliate (the "Special Purpose Vehicle" or "SPV") to a foreign lender bank and committed to repurchase these shares in the future. The SPV invested the money from the sales, paid taxes on the investment income to its foreign government, and made payments to the lender bank ("dividend"), which paid little, if any, tax on them because the local law treated the dividend as a tax-exempt intracorporate return of capital, since it regarded the bank as an owner, not a lender. AIG in effect shared the bank's tax benefit with it, by negotiating a "dividend" rate well below the return on the SPV's investments. It claims credits for the SPV's foreign tax payments, but will not obtain those credits if the application of the economic substance doctrine bars the transactions.

I summarized the parties' positions as follows:

> AIG contends the transactions were merely instances of highly profitable spread banking activity: AIG-FP [the SPV] borrowed funds from each lender, purchased investments, used the return on the investments to pay the lender a suitable interest, and profited from the difference between the interest and the return on the investments.

> The Government claims tax benefits generated that spread profit. According to the Government, AIG and the lender "effectively shifted" tax liability "from the foreign bank to the affiliate, Opp. at 5, which allowed the lender to receive its return as a tax-exempt dividend, and AIG to claim foreign tax credits and interest deductions to offset much of the foreign tax paid by the SPV. Those tax savings permitted AIG to negotiate a dividend rate lower than the return on the investments, creating AIG's profitable spread. Id.
>
> Thus, the Government argues the transactions lack economic substance, i.e. they "can not with reason be said to have purpose, substance, or utility apart from their anticipated tax consequences," Lee v. Comm'r, 155 F.3d 584, 586 (2d Cir. 1998) (quotation marks omitted). AIG claims that the economic substance doctrine does not apply, and that the transactions have economic substance because they were expected to generate a pre-tax profit over the life of the transactions of "at least $168.8 million." Reply at 12.

American Int'l Grp., Inc. v. United States, No. 09 Civ. 1871 (LLS), 2013 WL 1286193, at *2 (S.D.N.Y. Mar. 29, 2013).

I held that the economic substance doctrine (a transaction must offer a financial benefit aside from its tax advantages: not be done for only tax purposes) should be applied to six transactions made by U.S. taxpayer AIG; and I held that the tax purposes of those transactions shaped them because they would

not otherwise result in a significant profit, and therefore any tax benefits must be disallowed.

1.

Whether the economic substance doctrine applies is a question of law. Jacobsen v. Comm'r, 915 F.3d 832, 837 (2d Cir. 1990) ("While the Tax Court's conclusion that the acquisition of Promises lacked economic substance is a finding of fact to be reviewed for clear error, the legal standard applied by the Tax Court in making this determination is reviewed de novo.") AIG asserts that the purpose of the foreign tax credits is to avoid double taxation, and that it would be doubly taxed if the credits were disallowed.

Preventing double taxation is a documented aim of the credits and has been recognized as "the purpose" of the credits by the Supreme Court. See, e.g., United States v. Goodyear Tire & Rubber Co., 493 U.S. 132, 139 (1989) ("The history of the indirect credit clearly demonstrates that the credit was intended to protect a domestic parent from double taxation of its income."). The record establishes that disallowance of the credits would subject AIG to taxation on the same income in both the U.S. and a foreign jurisdiction. Thus, there are substantial grounds for ruling that the common-law disallowance doctrines (e.g., the requirement that the transaction have economic substance) are inapplicable.

Nevertheless, I disagreed with AIG, finding that "AIG cannot exclude consideration of the transactions' 'economic utility' and must show that 'what was done, apart from the tax benefits, is what was intended by Congress.'" American Int'l Grp. at *4.  That determination meant that the economic substance doctrine applied and AIG had to establish a profitable purpose in their transactions.

If the economic substance doctrine did not apply, little would be left of the Government's opposition to AIG's motion for judgment.  Alternatively, if the economic substance doctrine does apply, the issue turns to whether AIG's claim to the $168.8 million profit is sufficiently independent of the tax considerations, in which case AIG would be entitled to judgment, or rejected, and AIG might lose six of the seven transactions, leaving only one in dispute.

2.

The transactions were structured so that the foreign government regarded the lender's purchase of preferred stock to be an equity investment in the SPV.  Thus, it treated the SPV as the lender bank's corporate subsidiary, and the dividend as a tax-exempt intracorporate return of capital, not as interest. Because of that tax-free income, the lender bank allowed the interest rate to be set at a lower level, allowing the SPV's investments to produce profits over the life of the transactions

of upwards of $168.8 million. If the effects of that foreign tax benefit are removed, the SPV's cost of borrowing would have roughly equaled its return on the investment income, netting no gain for AIG and no profit from the transactions. I so held, because "AIG and its lenders considered the tax savings on the 'dividend' to be 'the benefit in the transaction,' structured the transactions to get those savings, and negotiated how to divide them." Id. at *7.

Nevertheless, two other circuits have adopted the view that under the economic substance test, the foreign tax benefit given to a foreign entity and shared with a U.S. taxpayer should be included in the U.S. taxpayer's profit. See Compaq v. Comm'r, 277 F.3d 778 (5th Cir. 2001); IES Industries Inc. v. United States, 253 F.3d 350 (8th Cir. 2001). Critical commentaries published since my Order provide significant support for the view that this question is particularly difficult and merits appellate review. See Jason Yen & Patrick Sigmon, District Court's "AIG" Ruling Expands Application of Economic Substance Doctrine in Unexpected Ways for Transactions Generating Excess Foreign Tax Credits, Daily Tax Report (May 5, 2013) ("If the decision stands it would represent a new and significant complication for taxpayers considering transactions that generate excess foreign tax credits or any transaction that involves tax benefits for unrelated participants"); Kevin Dolan,

The Foreign Tax Credit Diaries - Litigation Run Amok, Tax Notes 907 (August 2013) ("Should the U.S. borrower's pretax profit, or in this case its pretax benefit, be reduced by the foreign tax cost as a legal matter under the economic substance's for-profit test? The answer is no, and we have been already given that answer by two circuit courts").

3.

Immediate appeal will materially advance the ultimate termination of the litigation. It will avoid the risk of a lengthy trial on complicated issues of tax law which might be rendered moot, if either of the challenged rulings is erroneous.

Accordingly, plaintiff's motion for certification pursuant to § 1292(b) is granted.

So ordered.

Dated: New York, NY
       November 4, 2013

                                    _____
                                      Louis L. Stanton
                                          U.S.D.J.