ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN INTERNATIONAL GROUP, INC. and Subsidiaries,

Plaintiff,

v.

UNITED STATES OF AMERICA

Defendant.

ECF Case

Docket No. 09 Civ. 1871 (LLS)

**STIPULATION AND ORDER OF SETTLEMENT**

WHEREAS, this Stipulation and Order of Settlement (the "Stipulation") is entered into between plaintiff American International Group, Inc., on behalf of itself and its consolidated subsidiaries ("AIG"), by its authorized representatives, and defendant the United States of America (the "United States"), by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York (together, the "Parties");

WHEREAS, AIG is a corporation organized and existing under the laws of the State of Delaware and a holding company which, through its subsidiaries, is engaged in financial services and insurance activities;

WHEREAS, AIG filed the above captioned action (the "Action") in the United States District Court for the Southern District of New York (the "Court") and the matter was assigned to United States District Judge Louis L. Stanton;

WHEREAS, AIG filed its initial complaint in the Action on or about February 26, 2009, and filed an amended complaint on or about May 12, 2012 (the "Amended Complaint"), against the United States pursuant to the Internal Revenue Code of 1986, as amended and codified in Title 26 of the United States Code (the "Internal Revenue Code"), seeking a refund of $306,102,672 in

federal income taxes, penalties, interest, and additions to tax assessed against and collected from AIG by the United States for the tax year ending December 31, 1997 (the "1997 Tax Year");

WHEREAS, AIG timely filed with the Internal Revenue Service (the "IRS") a consolidated federal income tax return for the 1997 Tax Year (the "1997 Tax Return") and among the subsidiaries that AIG consolidated in its 1997 Tax Return was AIG Financial Products Corp. ("AIG-FP"), a Delaware corporation and wholly-owned subsidiary of AIG;

WHEREAS, from 1993 through 1997, AIG-FP entered into a series of cross-border transactions with foreign financial institutions described in paragraphs 8 through 154 of the Amended Complaint, namely the Laperouse, Lumagrove, Maitengrove, AIG-FP NZ Nos. 1 and 2, Palmgrove, and Vespucci Transactions (the "Borrowing Transactions"), and the Foppingadreef Investments (No. 2) N.V. transaction ("Foppingadreef 2," and together with the Borrowing Transactions, the "Disputed Transactions");

WHEREAS, on its 1997 Tax Return with respect to the Disputed Transactions, AIG: claimed $61,688,007 in foreign tax credits pursuant to 26 U.S.C. § 901 *et seq.* (the "Disputed Transaction Foreign Tax Credits"); claimed $74,720,142 in interest expense deductions pursuant to 26 U.S.C. § 163(a) (the "Disputed Transaction Interest Expense Deductions"); reported $61,688,007 in gross-up income pursuant to 26 U.S.C. § 78 (the "Disputed Transaction Gross-Up Income"); reported $84,548,045 in Subpart F income from controlled foreign corporations pursuant to 26 U.S.C. § 951 *et seq.* (the "Disputed Transaction Subpart F Income"); and reported $19,658,959 in other income allegedly related to the Disputed Transactions (the "Disputed Transaction Other Reported Income");

WHEREAS, on or about March 20, 2008, the IRS, after concluding, among other things, that the Disputed Transactions lacked economic substance, issued a Statutory Notice of Deficiency

to AIG disallowing the Disputed Transaction Foreign Tax Credits and asserting a 20% accuracy-related penalty of $12,632,368, *i.e.*, a substantial underpayment penalty pursuant to 26 U.S.C. § 6662(b)(2) with respect to the Disputed Transactions and, alternatively, a negligence penalty pursuant to 26 U.S.C. § 6662(b)(1) with respect to the Foppingadreef 2 transaction; and on or about July 8, 2008, the IRS assessed the deficiency, penalty and interest against AIG;

WHEREAS, prior to commencing this action, for the 1997 Tax Year, AIG paid to the United States the taxes, penalties, and interest assessed by the IRS, and timely filed a claim with the IRS demanding a refund of the amounts paid;

WHEREAS, AIG alleges in the Amended Complaint that it is further entitled to reduce its taxable income for the 1997 Tax Year by (1) $53,523,565 on account of adjustments arising from AIG's restatement of certain financial statements (the "Restatement"); (2) $134,278,131 on account of an alleged "net non-life operating loss" from the tax year ending December 31, 2002 (the "2002 Tax Year"), that AIG contends it may carry back to the 1997 Tax Year pursuant to 26 U.S.C. § 172; (3) $270,178,069 on account of an alleged net operating loss from the 2002 Tax Year arising from Restatement-related adjustments that AIG contends it may carry back to the 1997 Tax Year pursuant to 26 U.S.C. § 172; and (4) $6,816,405 on account of an alleged capital loss at AIG's life insurance subsidiaries from the tax year ending December 31, 2000, that AIG contends it may carry back to the 1997 Tax Year pursuant to 26 U.S.C. § 1212 (collectively, the "1997 Restatement and Carryback Claims");

WHEREAS, AIG also alleges that it is entitled to additional reductions to its taxable income in tax years after the 1997 Tax Year based on the alleged facts and circumstances underlying the 1997 Restatement and Carryback Claims (the "Post-1997 Restatement and Carryback Claims");

WHEREAS, on or about July 24, 2009, at the parties request, the court entered an order severing and staying the 1997 Restatement and Carryback claims, to permit IRS and AIG to negotiate a potential resolution of those claims, as well as the Post-1997 Restatement and Carryback Claims;

WHEREAS, on July 5, 2012, AIG filed suit against the United States in the United States Court of Federal Claims (Docket No. 12-437T), seeking additional statutory interest allowable on overpayments of tax for its taxable year 1991 under 26 U.S.C. § 6621(d), which action has been stayed pending, *inter alia*, resolution of this case and the Post-1997 Restatement and Carryback Claims, which may affect the amount of interest so allowable;

WHEREAS, AIG and the IRS intend to enter into the closing agreement attached hereto as Exhibit A resolving the Post-1997 Restatement and Carryback Claims,[1] which has been executed by AIG, and that IRS intends to execute after the above-captioned lawsuit has been resolved pursuant to the terms set forth in this Stipulation (the "Closing Agreement");

WHEREAS, the United States and AIG wish to resolve the 1997 Restatement and Carryback Claims according to the same terms set forth in the Closing Agreement with respect to the Post-1997 Restatement and Carryback Claims; and

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing AIG's federal income tax liability, including penalties, interest, and additions to tax, for the 1997 Tax Year ("AIG's 1997 Tax Liability");

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED:

**TERMS AND CONDITIONS**

1. The Parties agree that the Court has subject matter jurisdiction over this action.

---

[1] AIG expressly consents to the public filing of the redacted closing agreement attached as Exhibit A, and expressly acknowledges that the filing of this document is not a violation of 26 U.S.C. § 6103.

2. All of the Disputed Transaction Foreign Tax Credits that AIG claimed on its 1997 Tax Return shall be disallowed.

3. All of the Disputed Transaction Interest Expense Deductions that AIG claimed on its 1997 Tax Return shall be allowed.

4. AIG shall be allowed to reduce its taxable income for the 1997 Tax Year by the full amount of the Disputed Transaction Section 78 Gross-Up Income.

5. AIG shall not be allowed to reduce its taxable income for the 1997 Tax Year by any portion of the Disputed Transaction Subpart F Income.

6. AIG shall be allowed to reduce its taxable income for the 1997 Tax Year by $1,000,000 of the Disputed Transaction Other Reported Income, but shall not be allowed to reduce its taxable income for the 1997 Tax Year by the remaining $18,658,959 of the Disputed Transactions Other Reported Income.

7. In place of the penalties assessed by the IRS for the 1997 Tax Year, AIG shall pay the IRS a 10% substantial understatement penalty for that tax year if the terms of this Stipulation cause AIG to have a "substantial understatement of income tax" within the meaning of 26 U.S.C. § 6662(b)(2). If AIG does not have a "substantial understatement of income tax" within the meaning of 26 U.S.C. § 6662(b)(2) for the 1997 Tax Year, AIG shall pay the IRS a 10% negligence penalty in connection with the Foppingadreef 2 transaction under 26 U.S.C. § 6662(b)(1).

8. AIG's tax liability with respect to the Disputed Transactions for any tax year after the 1997 Tax Year during which any of the Disputed Transactions existed shall be determined pursuant to Paragraphs 2-6 of this Stipulation. For any tax year after 1997 in which the Disputed Transactions existed, if the terms of this Stipulation, together with the terms of any other agreement between AIG and the IRS for the relevant tax year, cause AIG to have a "substantial

understatement of income tax" within the meaning of 26 U.S.C. § 6662(b)(2), then AIG shall pay the IRS a 10% substantial understatement penalty on underpayments resulting from the Disputed Transactions. If AIG does not have a "substantial understatement of income tax" within the meaning of 26 U.S.C. § 6662(b)(2) in any tax year after 1997 in which the Disputed Transactions existed, then for any such tax year in which the Foppingadreef 2 transaction existed, AIG shall pay the IRS a 10% negligence penalty in connection with such transaction under 26 U.S.C. § 6662(b)(1).

9. The 1997 Restatement and Carryback Claims are hereby resolved pursuant to the terms set forth in the Closing Agreement.

10. AIG, together with its predecessors and successors, fully and finally releases the United States, its agencies, departments, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that AIG, together with its predecessors and successors, has asserted, could have asserted, or may assert in the future against the United States, its agencies, departments, officers, employees, servants, or agents related to AIG's 1997 Tax Liability, the Disputed Transactions, and the claims in the Amended Complaint.

11. Notwithstanding the release given in Paragraph 10 above, or any other term of this Stipulation, AIG's claim in the U.S. Court of Federal Claims (Docket No. 12-437T) for additional overpayment interest for its taxable year 1991 under 26 U.S.C. § 6621(d) is specifically reserved and is not released by this Stipulation.

12. Subject to the exceptions in Paragraph 13 below, and in consideration of the obligations of AIG in this Stipulation, and conditioned upon AIG's full compliance with the terms of this Stipulation, the United States releases AIG, together with its predecessors and successors,

from any civil or administrative monetary claim that the United States has under the Internal Revenue Code for AIG's 1997 Tax Liability.

13. Notwithstanding the release given in Paragraph 12 above, or any other term of this Stipulation, the following claims of the United States are specifically reserved and are not released by this Stipulation:

    a. any criminal liability;

    b. except as explicitly stated in this Stipulation, any administrative liability;

    c. any liability to the United States (or its agencies) other than AIG's 1997 Tax Liability;

    d. any liability based upon obligations created by this Stipulation; and

    e. any liability of individuals.

14. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York, including for any disputes regarding the calculation of interest for the 1997 tax year on the agreed amount of AIG's 1997 Tax Liability. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

15. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties.

16. Any failure by the United States or AIG to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof,

and the United States or AIG, as the case may be, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation.

17. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the entities indicated below.

18. This Stipulation is binding on AIG's successor entities.

19. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

20. In the event that the Court does not sign and enter this Stipulation, or makes material changes to the Stipulation to which the Parties do not agree in writing, the entire Stipulation is null and void, with no force or effect.

21. The Amended Complaint is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41, and without costs or attorneys' fees awarded to either Party.

Dated: New York, New York
October 22, 2020

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York

By: Pierre G. Armand /RST
PIERRE G. ARMAND
JENNIFER A. JUDE
TALIA KRAEMER
CHARLES JACOB
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2800
Fax: (212) 637-2686

*Counsel for the United States of America*

Dated: Washington, D.C.
October 22, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM

By: [signature]

Kevin R. Stults
1440 New York Ave., N.W.
Washington, D.C. 20005
Tel: (202) 371-7095
Fax: (202) 661-9095

*Counsel for American International Group, Inc., and Subsidiaries*

Dated: Washington, D.C.
October 22, 2020

EVERSHEDS SUTHERLAND (US) LLP
(formerly SUTHERLAND ASBILL & BRENNAN LLP)

By: [signature]

JEROME B. LIBIN
700 Sixth St., N.W.
Washington, D.C. 20001
Tel: (202) 383-0145
Fax: (202) 637-3593
jeromelibin@eversheds-sutherland.com

*Counsel for American International Group, Inc., and Subsidiaries*

SO ORDERED.

Dated: New York, New York
October 22, 2020

[signature: Louis L. Stanton]
HON. LOUIS L. STANTON
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Form 906

Department of the Treasury - Internal Revenue Service

# CLOSING AGREEMENT ON FINAL DETERMINATION COVERING SPECIFIC MATTERS

## RESTATEMENT AND CARRYBACK CLAIMS

Under Section 7121 of the Internal Revenue Code of 1986, as amended ("IRC"), American International Group, Inc. ("AIG"), EIN 13-2592361, 175 Water Street, c/o AIG Corporate Tax Department, 80 Pine Street, New York, NY, 10005, on behalf of itself and as agent for the American International Group, Inc. & Subsidiaries consolidated group ("AIG Group" or "Taxpayer"), and the Commissioner of Internal Revenue (the "Commissioner"), collectively known as the "Parties", make the following closing agreement (the "Closing Agreement"):

### Background

WHEREAS, in February 2005, the Taxpayer received subpoenas from the New York Attorney General and the U.S. Securities and Exchange Commission relating to investigations into the use of non-traditional insurance products, certain assumed reinsurance transactions, and the AIG Group's accounting for such transactions;

WHEREAS, in response to these investigations, the Taxpayer began an internal review of its books and records relating to certain insurance products and transactions;

WHEREAS, as a result of the internal review, the Taxpayer was required to restate and amend certain items in order to correctly reflect the items for U.S. Generally Accepted Accounting Principles ("G.A.A.P.") and U.S. statutory accounting ("STAT") purposes, collectively known as the "Restatement";

WHEREAS, the Taxpayer asserts that the result of the Restatement was a reduction in AIG's pre-tax book income of [redacted]

WHEREAS, the Taxpayer filed with the Commissioner Federal tax refund claims asserting reductions in the Taxpayer's pre-tax income based upon the Restatement for a number of tax years;

WHEREAS, in June 2007, the Taxpayer filed Forms 1120X, Amended U.S. Corporation Income Tax Return, amending the tax it reported for the Restatement issues for tax years 1991 through 1996;

WHEREAS, in April 2008, the Taxpayer filed Forms 1120X, Amended U.S. Corporation Income Tax Return, amending the tax it reported for the Restatement issues for tax years 1997 through 1999;

WHEREAS, the June 2007 Forms 1120X, April 2008 Forms 1120X, and Statements of Income Tax Changes filed in 2008, are hereinafter collectively referred to as the "Refund Claims";

WHEREAS, the Commissioner reviewed the Taxpayer's Refund Claims and denied portions of the Refund Claims related to the (i) "Compensation Plans" and (ii) "Risk Transfer" issues as defined below;

**Compensation Plans**

WHEREAS, the Taxpayer asserts that shareholders of AIG stock, specifically Starr International Company, Inc. ("SICO") and C.V. Starr & Company, Inc. ("CV Starr"), beginning in the 1970s, implemented incentive compensation plans for certain AIG employees ("Compensation Plans");

WHEREAS, the Taxpayer asserts that, although the Compensation Plans were maintained and funded by AIG shareholders, the payments under the plans were made to AIG employees as incentives for services the employees performed for AIG;

WHEREAS, as the Taxpayer claims the Compensation Plans payments are deductible expenses pursuant to IRC Sections 83 and 162, and the Taxpayer did not recognize such expenses on its originally filed returns, the Taxpayer included the claims for refund related to these compensation deductions in the Refund Claims;

WHEREAS, the Commissioner, through his Revenue Agent Reports ("RARs") and Forms 5701, Notices of Proposed Adjustment ("Forms 5701"), denied the Taxpayer's deductions under various theories, including duty of consistency and lack of substantiation;

WHEREAS, the Parties wish to settle the Compensation Plans refund claims;

**Risk Transfer**

WHEREAS, AIG entered into contracts as described in Form 5701 # 9 for the 1991-1996 cycle (and in Forms 5701 for subsequent cycles) and which are referred to as the "Union Excess" contracts;

WHEREAS, AIG entered into contracts as described in Form 5701 # 9 for the 1997-1999 cycle (and in Forms 5701 for subsequent cycles) and which are referred to as the "AIG Re" contracts;

******** The Remainder of This Page Intentionally Left Blank ********

WHEREAS, AIG entered into contracts as described in Form 5701 # 332 for the 2000-2002 cycle (and in Forms 5701 for subsequent cycles) and which are referred to as the "Lexington" contracts;

WHEREAS, AIG entered into contracts as described in Form 5701 # 328 for the 2000-2002 cycle (and in Forms 5701 for subsequent cycles) and which are referred to as the "Life Settlement" contracts;

[redacted]

WHEREAS, the Taxpayer asserts that it entered into the above mentioned contracts ("Union Excess," "AIG Re," "Lexington," [redacted] and "Life Settlements") with counterparties under agreements that the Taxpayer purported to be insurance or reinsurance contracts but that were determined to lack a sufficient transfer of risk to qualify as insurance for state insurance regulatory purposes (hereinafter defined as the "Risk Transfer" contracts);

WHEREAS, on its originally filed U.S. Federal Income Tax Returns, the Taxpayer accounted for such contracts under the insurance method of accounting, and reported for U.S. Federal income tax purposes the related income and loss as insurance income or loss consistent with the Taxpayer's position that these contracts had certain characteristics of insurance or reinsurance;

WHEREAS, the Taxpayer asserts that during the Restatement, the Taxpayer's state insurance regulators determined that the Risk Transfer contracts lacked a sufficient transfer of risk to be treated as insurance or reinsurance for state insurance regulatory purposes;

WHEREAS, the Taxpayer asserts that it concurred with the determination of its state insurance regulators that the Risk Transfer contracts lacked a sufficient transfer of risk to qualify as insurance;

WHEREAS, the Taxpayer asserts that as a result, the Taxpayer restated its G.A.A.P. and STAT books and records for the Risk Transfer contracts in order to report the contracts as deposits;

WHEREAS, as the Taxpayer now claims the Risk Transfer contracts lacked a sufficient transfer of risk to qualify as insurance, the Taxpayer asserts that the contracts should be accounted for and reported for U.S. Federal income tax purposes as deposits;

WHEREAS, the Taxpayer has amended its method of accounting on its U.S. Federal income tax returns to account for the Risk Transfer contracts as deposits for its 1996 through 2005 tax years;

WHEREAS, for tax years 2006 through the present time, the Taxpayer has reported the Risk Transfer contracts as deposits for U.S. Federal income tax purposes;

WHEREAS, the Commissioner denied the refund claims under the theory that the Taxpayer had changed its accounting method without a request to the Commissioner to change its method of accounting pursuant to IRC Section 446;

WHEREAS, after discussion, the Parties want to settle the Risk Transfer refund claims;

**1997 Tax Year Litigation**

WHEREAS, the Taxpayer has commenced suit against the United States, in the U.S. District Court for the Southern District of New York (the "Court"), for the refund of taxes paid in its 1997 tax year for certain cross border transactions unrelated to this Agreement, as well as for the Compensation Plans and Risk Transfer Issues (the "1997 Litigation");

WHEREAS, the cross border transactions at issue affect the Taxpayer's 1997 through 2008 tax years;

WHEREAS, the United States is represented in that litigation by the United States Attorney for the Southern District of New York;

WHEREAS, the Compensation Plans and Risk Transfer issues were, by agreement of the parties in that case, severed from the litigation in order to allow the Parties to proceed administratively to a resolution on the issues with the Internal Revenue Service, subject to the review and approval of the United States Department of Justice;

WHEREAS, because of the1997 Litigation, Appeals does not have jurisdiction over and may not settle the Taxpayer's 1997 tax year, and thus, any agreement between Appeals and the Taxpayer concerning the 1997 tax year must be approved by the United States Department of Justice and incorporated into a Stipulation and Order of Settlement between the United States and the Taxpayer entered by the Court; and

WHEREAS, the Taxpayer and the United States Department of Justice will execute a Stipulation and Order of Settlement resolving all outstanding issues in the 1997 Litigation including the Compensation Plans and Risk Transfer issues for the 1997 tax year with finality simultaneously with the execution of this Closing Agreement.

**NOW IT IS HEREBY DETERMINED AND AGREED** for Federal income tax purposes that:

**Compensation Plans**

1) For tax years 1991 through 2006, payments made by SICO and CV Starr under the Compensation Plans are deductible pursuant to IRC Sections 83 and 162, and the Treasury Regulations thereunder, in accordance with Tables 1 and 2 herein (amounts in parenthesis are deductions to income).

******** The Remainder of This Page Intentionally Left Blank ********

DocuSign Envelope ID: A2D8ED99-A160-4DFF-993E-911C54A94C33

Closing Agreement with American International Group, Inc., EIN 13-2592361

Table 1 (SICO)

| Year | Per Return | Per Refund Claim | Per Closing Agreement |
|---|---|---|---|
| 1997 | 0 | (33,294,586) | (29,965,127) |
| TOTAL | - | | |

Table 2 (CV Starr)

| Year | Per Return | Per Refund Claim | Per Closing Agreement |
|---|---|---|---|
| 1997 | 0 | (3,109,327) | (838,610) |
| TOTAL | | | |

Page 5 of 8

**Risk Transfer**

2) The Risk Transfer contracts as previously defined should be reported by the Taxpayer under the deposit method of accounting beginning in tax year 2004.

3) For tax years 1996 through 2003, the Risk Transfer contracts as previously defined that were initially reported under the insurance method on the Taxpayer's 1996 to 2003 Forms 1120, U.S. Corporation Income Tax Return, should be reported under the insurance method of accounting.

4) The Taxpayer is not required to amend any U.S. Federal income tax return or U.S. Federal income tax return position or item related to the method of accounting for the Risk Transfer contracts as previously defined.

5) The Commissioner is not precluded from changing the Taxpayer's method of accounting for the Risk Transfer contracts from the new method of accounting if the Commissioner determines that the new method does not clearly reflect the taxpayer's income. However, under section 7.04(3) of Rev. Proc. 2002-18, the Commissioner will not require the taxpayer to change its method of accounting for the Risk Transfer contracts from the new method for the 2004 through 2019 taxable years, provided that:

   a. the taxpayer has complied with all the applicable provisions of this closing agreement;
   b. there has been no taxpayer fraud, malfeasance, or misrepresentation of a material fact;
   c. there has been no change in the material facts on which this closing agreement was based; and
   d. there has been no change in the applicable law on which this closing agreement was based.

6) The Taxpayer and the Commissioner agree to settle the Risk Transfer refund claims by discounting from March 15, 2017, 85 percent of the net refund claims amount for the time value of money by the applicable IRC Section 6601 quarterly underpayment interest rates, and by reporting said discounted amount in the Taxpayer's 2004 tax year. The remaining 15 percent will be allowed without discounting in the Taxpayer's 2004 tax year. The adjusted income for the Risk Transfer contracts is detailed in Table 3 herein.

******** The Remainder of This Page Intentionally Left Blank ********

Table 3 (Risk Transfer) – (Reduction)/Increase to Income

| Year | Per Return | Per Refund Claim | Per Closing Agreement |
|---|---|---|---|
| 1997 | 28,000,000 | (28,000,000) | 0 |
| TOTAL | | | |

## 1997 Tax Year Litigation

7) The Parties agree that, upon resolution of the 1997 Litigation, and upon application of the Compensation Plans and Risk Transfer refund claims, should the Taxpayer have overpaid tax related thereto the Taxpayer shall not be required to file any additional refund claims or request beyond those already in existence as of the date of execution of this Closing Agreement in order to secure tax refund of the overpaid tax and any related interest.

8) Any inspection of records during the consideration of this Closing Agreement does not preclude or impede, pursuant to IRC Section 7605(b) or any administrative provisions adopted by the Internal Revenue Service, a later examination of a return or inspection of records with respect to any taxable year needed to resolve any issues outside the scope of this Closing Agreement.

This Closing Agreement is final and conclusive except:

a. The matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

b. It is subject to the IRC sections that expressly provide that effect be given to their provisions (including any stated exception for IRC Section 7122) notwithstanding any other law or rule of law; and

DocuSign Envelope ID: A2D8ED99-A160-4DFF-993E-911C54A94C33

c. If it relates to a tax period ending after the date of this Closing Agreement, it is subject to any law, enacted after the Closing Agreement date that applies to that tax period.

By signing, the Parties certify that they have read and agreed to the terms of this Closing Agreement.

**American International Group, Inc. & Subsidiaries**

DocuSigned by:

By: Angela Bekker Date Signed: 10/16/2020

D0F9FB9AE5A445B...

Title: Vice President, Head of Global Tax

**Commissioner of Internal Revenue**

By: ______________________________ Date Signed: ____________

Title: ______________________________